IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


BRADLEY WILLIAMS,

                    Plaintiff,

vs.                                        Case No. 09-1341-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties.

## I.  General legal standards

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot,

considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to

determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On June 11, 2009, administrative law judge (ALJ) Edmund C. Werre issued his decision (R. at 10-18). Plaintiff is insured for disability insurance benefits through September 30, 2010 (R. at 12). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since November 7, 2006, the alleged onset date of disability (R. at 12). At step two, the ALJ found that plaintiff had the following severe

impairments: brachial plexus injury residuals left non-dominate upper extremity, hypertension, cephalgia, and depression (R. at 12). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 12). After determining plaintiff's RFC (R. at 14), the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 16). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 16-17). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 17-18).

**III. Did the ALJ err in making his RFC findings?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative

discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The record contains two medical opinions regarding plaintiff's RFC. First, is a state agency RFC assessment approved by Dr. Legler and Dr. Siemsen (R. at 280-287, 302, 306). It indicates that plaintiff: (1) is limited to lifting/carrying

6

20 pounds occasionally and 10 pounds frequently; (2) can stand/walk for 6 hours in an 8 hour workday; (3) can sit for 6 hours in an 8 hour workday; (4) can occasionally climb ladders/ropes/scaffolds; and (5) is limited in his ability to reach, handle, finger and feel with his left arm (R. at 281-283). Second, is a functional capacity evaluation by a physical therapist (R. at 316-320). This evaluation indicates that plaintiff can never push, pull, reach forward, reach above shoulder, or grasp with the left upper extremity, and can only occasionally (1-33% of the time) engage in fine hand manipulation or simple grasping with the left upper extremity. It further indicates that plaintiff cannot climb ladders, and can only engage in trunk twisting from 1-6% of the time. It also stated that plaintiff can climb stairs, stand/walk and sit frequently (34-66% of the time). Finally, it found that plaintiff has no restrictions in bending/stooping, squatting, kneeling, and in fine hand manipulation and simple grasping with the right upper extremity (R. at 316). It limited plaintiff to occasionally lifting 10 pounds and frequently lifting 5 pounds in his right upper extremity only, thus limiting plaintiff to sedentary work (R. at 317, 320).

The ALJ made the following RFC findings for the plaintiff:

> After careful consideration of the entire
> record, the undersigned finds that the
> claimant has the residual functional capacity
> to perform light work as defined in 20 CFR

404.1567(b) and 416.967(b) with no more than
occasional lifting up to 20 pounds, no more
than frequently lifting/carrying up to 10
pounds; standing or walking 6 hours out of an
8-hour workday and sitting 6 hours out of an
8-hour workday; no exposure to hazards such
as unprotected heights, being around
dangerous moving machinery, or operation of
motorized vehicles, temperature/humidity
extremes, or extremely loud noises. The
claimant is able to understand, remember, and
carry out simple instructions consistent
with unskilled work that is repetitive,
routine, and low stress in nature that **does
not require significant use of the
non-dominate left upper extremity**.

(R. at 14, emphasis added).

Plaintiff alleges that the ALJ failed to provide a
sufficient explanation of the basis for his RFC findings, and
that his RFC findings are not supported by substantial evidence.
In his decision, the ALJ provided, in relevant part, the
following explanation for his RFC findings:

In terms of the claimant's alleged limitation
related to his left arm, it is found to be
credible and the residual functional capacity
herein notes that he is limited in the use of
his left non-dominant arm. A Functional
Capacity Evaluation was completed on January
8, 2009, by Brenda Hendrick, LPT. She
essentially recommended that the claimant be
limited from use of his left upper extremity.
Additionally, based on her evaluation of the
claimant she recommended that he was limited
to sedentary work only. This limitation is
not supported by the medical record, as it
was previously noted in her report that his
right upper extremity had no significant
limitations.

. . . . . . . . . .

8

Again the record documents that only the claimant's left shoulder and arm had significant limitations...That as a result of the claimant's left arm pain, decreased concentration, and headaches he would be limited to repetitive, routine, and low stress work activity.

The medicine encounter notes from Via Christi Family Medicine reflect that the claimant's pain in his neck, shoulder, and arm are alleviated with medication and relaxation. The notes further reflect that the claimant's hypertension and depression are controlled by medications, and only on one occasion did the claimant report blacking out. which contrasts with the claimant's testimony at the hearing of blackouts happening on a daily basis. Accordingly, the claimant should avoid hazards.

..........

In reaching this conclusion, the undersigned also considered the medical opinions of the State agency medical consultants who provided a physical functional capacity assessment for light work with some postural and manipulative limitations. (Exhibit B3F, B5F, and B7F)...While the physical opinions were reasonably based on the evidence available at the time, additional evidence received into the record including testimony by and observations of the claimant at the hearing, convinced the undersigned that the claimant was more limited than originally thought.

(R. at 15-16).

The ALJ limited plaintiff to the lifting/carrying

requirements for light work instead of sedentary work.[1]  Although

---

[1]Sedentary work involves lifting/carrying no more than 10 pounds; light work involves lifting/carrying no more than 20 pounds at a time with frequent lifting/carrying of up to 10 pounds.  20 C.F.R. § 404.1567(a,b) (2010 at 392).

the physical therapist limited plaintiff to lifting/carrying

consistent with sedentary work, the state agency assessment

opined that plaintiff could lift/carry consistent with light

work. That assessment noted that plaintiff stated that he could

lift 20 pounds (R. at 287); plaintiff did in fact indicate on

March 13, 2007 that he could lift only 20 pounds (R. at 174,

176). The court will not reweigh the evidence or substitute its

judgment for that of the Commissioner. <u>Hackett v. Barnhart</u>, 395

F.3d 1168, 1173 (10th Cir. 2005); <u>White v. Barnhart</u>, 287 F.3d

903, 905, 908, 909 (10th Cir. 2002). The court finds that

substantial evidence supports the ALJ's determination that

plaintiff can perform light work.[2]

The ALJ also indicated in his RFC findings that plaintiff

can only perform work "that does not require significant use of

the non-dominant left upper extremity" (R. at 14). This finding

is generally consistent with both medical assessments. Plaintiff

asserts that the use of the word "significant" is vague and does

not provide sufficient specificity regarding plaintiff's

---

[2]Furthermore, the court would note that even if plaintiff
wee limited to sedentary work, the vocational expert (VE)
testified that plaintiff could perform 2 sedentary jobs. The VE
further testified that 5,590 of those jobs exist in the Wichita
area, 27,160 in the state, and 3,291,210 in the nation (R. at
54). The 10th Circuit has previously indicated that "far fewer
than 1.34 millions jobs" qualifies as a significant number of
jobs in the national economy. <u>Raymond v. Astrue</u>, 356 Fed. Appx.
173, 177 (10th Cir. Dec. 15, 2009); <u>cf</u>. <u>Stokes v. Astrue</u>, 274
Fed. Appx. 675, 684 (10th Cir. Apr. 18, 2008)(finding only
152,000 jobs in the national economy sufficient).

limitations.

The functional capacity evaluation states that plaintiff can occasionally (1-33% of the time) engage in fine hand manipulation and simple grasping with the left upper extremity, and cannot engage in lifting, carrying, pushing, pulling, forward reaching, reaching above the shoulder, or forceful grasping with the left hand (R. at 316-317).  Although the ALJ could have set forth with greater specificity plaintiff's limitations with his left upper extremity, SSR 96-9p notes that any "significant" manipulative limitations of a claimant's ability to handle and work with small objects with both hands will result in a significant erosion of the sedentary base.  1996 WL 374185 at *8.  Thus, the use of the word "significant" is not unduly vague, but is a term used in the Social Security Rulings in connection with manipulative limitations to indicate the impact on the sedentary work base. Furthermore, the ALJ's finding that plaintiff cannot perform work that requires significant use of the left upper extremity is generally consistent with the functional capacity evaluation indicating that plaintiff could occasionally use his left upper extremity for some purposes, but not others.[3]

---

[3]There is no evidence that had the vocational expert (VE) been provided with the more specific limitations noted in the functional capacity evaluation, that it would have impacted the testimony of the VE.  The functional capacity evaluation was in the record at the time of the hearing, but plaintiff's counsel chose not to ask the VE at the hearing if the limitations to the left upper extremity noted in the evaluation would have resulted

The court finds that the ALJ's RFC findings are supported by either one or both medical opinions regarding plaintiff's limitations. Although the functional capacity evaluation limited plaintiff to sedentary work, the state agency assessment and plaintiff's own statement indicated that he could perform light work; thus, substantial evidence supported the ALJ's findings that plaintiff could perform light work. The finding that plaintiff not engage in "significant" use of the left upper extremity is generally consistent with both medical opinions. Other than the limitations already discussed, there are no other limitations in either medical opinion (or in any of the other medical records) which were not included in the ALJ's RFC findings. The court finds that the ALJ provided a sufficient narrative explanation in support of his RFC findings, and that those findings are supported by substantial evidence.

## IV. Are the ALJ's credibility findings supported by substantial evidence?

Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the

---

in different findings by the VE. In fact, plaintiff's counsel did not ask the VE any questions at the hearing when given an opportunity to do so by the ALJ (R. at 58).

guise of findings. <u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff. <u>Owen v. Chater</u>, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in <u>Kepler</u>. <u>White v. Barnhart</u>, 287 F.3d 903, 909 (10th Cir. 2002); <u>Qualls v. Apfel</u>, 206 F.3d 1368, 1372 (10th Cir. 2000). Furthermore, the ALJ need not discuss every relevant factor in evaluating pain testimony. <u>Bates v. Barnhart</u>, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. <u>McGoffin v. Barnhart</u>, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. <u>Hardman v. Barnhart</u>, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. <u>White</u>, 287 F.3d at 909-910.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

In his decision, the ALJ mentioned some of plaintiff's daily activities (R. at 15, 15-16). However, the ALJ did not argue that plaintiff's performance of activities of daily living to any degree meant that the claimant could perform work on a full-time basis. See Cobb v. Astrue, 364 Fed. Appx. 445, 450-451 (10th Cir. Feb. 4, 2010)(no error by ALJ when he found that plaintiff's activities of daily living suggested "some" capacity to function in a work environment). The court finds no error by the ALJ in

his mention of plaintiff's daily activities.

Other arguments by the plaintiff, including plaintiff's work history, are simply arguments regarding the weight to be accorded to the evidence in the case. The court will not reweigh the evidence. The court finds no clear error by the ALJ in his consideration of plaintiff's work history.

The ALJ also noted that plaintiff had no medical intervention from February 2007 through October 2008, indicating that plaintiff was able to cope without the need for further medical intervention, including pain medications (R. at 15). However, the ALJ failed to mention that the medical records and the testimony of the plaintiff indicate that plaintiff was without health insurance during this time (R. at 38, 267, 309). While failure to seek treatment may be probative of severity, the ALJ has a basic duty of inquiry to ask the plaintiff why he/she did not seek treatment, or why it was sporadic. Kratochvil v. Barnhart, 2003 WL 22176084 at *5 (D. Kan. Sept. 17, 2003). Similarly, SSR 96-7p states the following:

> On the other hand, the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any

> explanations that the individual may provide,
> or other information in the case record, that
> may explain infrequent or irregular medical
> visits or failure to seek medical treatment.
> The adjudicator may need to recontact the
> individual or question the individual at the
> administrative proceeding in order to
> determine whether there are good reasons the
> individual does not seek medical treatment or
> does not pursue treatment in a consistent
> manner. The explanations provided by the
> individual may provide insight into the
> individual's credibility.

SSR 96-7p, 1996 WL 374186 at *7.  See Madron v. Astrue, 311 Fed.

Appx. 170, 178 (10th Cir. Feb. 11, 2009).

Furthermore, the 10th Circuit, relying on the case of

Thompson v. Sullivan, 987 F.2d 1482, 1489-90 (10th Cir. 1993),

has repeatedly held that the inability to pay may justify a

claimant's failure to pursue or seek treatment.  Threet v.

Barnhart, 353 F.3d 1185, 1190 n.7 (10th Cir. 2003); Norris v.

Apfel, 215 F.3d 1337 (table), 2000 WL 504882 at *8 (10th Cir.

Apr. 28, 2000); Smith v. Apfel, 149 F.3d 1191 (table), 1998 WL

321176 at *4 (10th Cir. June 8, 1998); Snead v. Callahan, 129

F.3d 131 (table), 1997 WL 687660 at *4 (10th Cir. Oct. 31, 1997);

see also Eason v. Chater, 951 F. Supp. 1556, 1562 (D. N.M.

1996)(claimant should not be penalized for failing to seek

treatment that they cannot afford); Hockenhull v. Bowen, 723 F.

Supp. 555, 557 (D. Colo. 1989) (evidence of nontreatment is of

little weight when claimant's failure to seek medical treatment

can be attributed to their inability to pay for such treatment).

The ALJ clearly should have considered plaintiff's explanation indicating that he lacked insurance for the period of time that he did not receive medical treatment.

Although the court has some concerns with the ALJ's failure to consider the evidence that plaintiff lacked insurance for the period of time that he did not receive medical treatment, after examining the record as a whole, including the fact that the ALJ's RFC findings are generally consistent with the medical opinion evidence, the court finds that the balance of the ALJ's credibility analysis is nonetheless closely and affirmatively linked to substantial evidence. See Branum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004)("While we have some concerns regarding the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain minimal household chores, we conclude that the balance of the ALJ's credibility analysis is supported by substantial evidence in the record."); Matlock v. Astrue, Case No. 09-1207-MLB (D. Kan. May 7, 2010; Doc. 16 at 24-26)(While the court had a concern with the ALJ's conclusion that the claimant's ability to perform daily activities "to any degree suggests that he retains the ability to work full-time," the court concluded that the balance of the credibility analysis was closely and affirmatively linked to substantial evidence, including the lack of any medical evidence that plaintiff had limitations not included in the ALJ's

RFC findings); <u>McGlothlin v. Astrue</u>, Case No. 08-1117-WEB (D. Kan. Aug. 4, 2009, Doc. 17 at 13 (same); <u>Landwehr v. Astrue</u>, Case No. 08-1154-WEB (D. Kan. May 14, 2009, Doc. 15 at 14-17) (Despite one error in the ALJ's credibility analysis, the court held that the ALJ's credibility analysis was nonetheless closely and affirmatively linked to substantial evidence); <u>Kochase v. Astrue</u>, Case No. 07-1190-MLB, 2008 WL 852123 at *9 (D. Kan. March 28, 2008, Doc. 14 at 20-23) (same).

## V. Are the ALJ's findings at step five supported by substantial evidence?

SSR 00-4p states that before relying on VE evidence to support a disability determination or decision, an ALJ must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by vocational experts and information in the DOT [Dictionary of Occupational Titles] (including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)) and explain in the decision how any conflict that has been identified was resolved. 2000 WL 1898704 at *1. In making disability determinations, defendant will rely primarily on the DOT for information about the requirements of work. Occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between the VE

18

evidence and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a decision about whether a claimant is disabled. At the hearing level, as part of the ALJ's duty to fully develop the record, the ALJ will inquire, on the record, as to whether or not there is such consistency. If a conflict exists, the ALJ must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE testimony rather than on the DOT information. 2000 WL 1898704 at *2.

The VE identified four jobs that plaintiff could perform given the RFC findings of the ALJ (R. at 53-54). The ALJ adopted the opinions of the VE in finding that plaintiff could perform other work that exists in significant numbers in the national economy (R. at 17).

The ALJ's RFC findings for the plaintiff stated that plaintiff needed to be limited to work that did not require significant use of the non-dominant left upper extremity (R. at 14). Plaintiff argues that all four jobs identified require the frequent ability to reach, handle and finger; however, the plaintiff also noted that the DOT does not differentiate between the use of the left hand or right hand or both hands (Doc. 11 at 14).

In the case of <u>Segovia v. Astrue</u>, 226 Fed. Appx. 801, 804

(10th Cir. March 23, 2007), the court held as follows:

> Both the ticket-taker and cafeteria-attendant
> positions require..."frequent" reaching, see
> SCO §§ 09.05.02, 09.05.08; Aplt.App. at 439,
> 446, while Ms. Segovia is limited to
> occasional overhead reaching. For purposes of
> the SCO, however, "reaching" is defined as
> "[e]xtending hand(s) and arm(s) in any
> direction." SCO at C-3 (emphasis added). **The
> SCO does not separately classify overhead
> reaching. Thus, under the SCO, even a job
> requiring frequent reaching does not
> necessarily require more than occasional
> overhead reaching. The VE was aware of Ms.
> Segovia's limitations on overhead reaching,
> and he testified both that she could perform
> the jobs he identified and that his opinion
> of the jobs open to her was consistent with
> the DOT's specifications. Aplt.App. at
> 391-92, 395. In these circumstances, the VE's
> testimony does not conflict with the DOT and
> SCO so much as it clarifies how their broad
> categorizations apply to this specific case.**
> See <u>Carey v. Apfel</u>, 230 F.3d 131, 146 (5th
> Cir.2000) ("To the extent that there is any
> implied or indirect conflict between the
> vocational expert's testimony and the DOT in
> this case, ... the ALJ may rely upon the
> vocational expert's testimony provided that
> the record reflects an adequate basis for
> doing so.... [A]ll kinds of implicit
> conflicts are possible and the categorical
> requirements listed in the DOT do not and
> cannot satisfactorily answer every such
> situation."). **Further, the DOT descriptions
> for cafeteria attendant and ticket taker do
> not indicate that these jobs predominantly
> involve overhead reaching rather than other
> types of reaching.** See DOT §§ 311.677-010,
> 344.667-010; Aplt.App. at 437, 445.

(emphasis added).

The DOT and the SCO do not separately classify reaching,

handling or fingering with one hand, or both hands, or the

dominant or non-dominant hand.  Thus, under the SCO, a job requiring frequent reaching, handling and fingering does not necessarily require that a claimant be able to frequently reach, handle and/or finger with both hands or with the non-dominant hand.  As was the case in <u>Segovia</u>, the VE was aware of plaintiff's limitation with the non-dominant left hand, and he testified that plaintiff could perform the jobs he identified and that his opinion was consistent with the DOT (R. at 53-54, 57-58).  The court finds that in these circumstances, the VE's testimony does not conflict with the DOT and SCO so much as it clarifies how their broad categorizations apply to this specific case.  The court finds no clear error by the ALJ in his findings at step five.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 26th day of October, 2010, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge